# FARR *v.* PITCHESS, SHERIFF OF LOS ANGELES COUNTY, CALIFORNIA

No. A–705.   Decided January 11, 1973

See: 22 Cal. App. 3d 60, 99 Cal. Rptr. 342.

MR. JUSTICE DOUGLAS, Circuit Justice.

Applicant Farr was a reporter for the Los Angeles Herald Examiner and published stories about the *Manson* trial, which were greatly publicized during the trial. The trial judge in the case had issued orders barring the litigants and their lawyers from giving certain information to the press. When the *Manson* trial was ended, the trial judge summoned Farr and asked him what the sources of his information were. Farr acknowledged that he had received the news story from two of the six attorneys of record in the *Manson* case and some of it from another individual who was subject to the order concerning publicity but who was not an attorney. Farr refused to disclose the names and was committed to prison for civil contempt. He obtained no relief in the

state courts[1] and then brought federal habeas corpus which the District Court denied and, pending his appeal to the Court of Appeals for the Ninth Circuit, he has applied to me for bail or release on personal recognizance.

Like the three cases decided in *Branzburg* v. *Hayes,* 408 U. S. 665, the present case involves civil, not criminal, contempt. *Branzburg,* however, involved refusal of a reporter to testify before a grand jury and reveal the sources of his news stories. The federal rule is that just as the power of Congress to commit a recalcitrant witness for civil contempt ends with the adjournment of that Congress, *Anderson* v. *Dunn,* 6 Wheat. 204, 231, so does the power of the grand jury end when the grand jury's term expires. *Shillitani* v. *United States,* 384 U. S. 364, 370–372.

What rule obtains in California is not clear; but it is intimated that theoretically at least imprisonment for civil contempt could be for life.

The commitment is defended on the ground that the trial court, armed with power to keep the trial free from prejudicial publicity, *Sheppard* v. *Maxwell,* 384 U. S. 333, has authority to discipline those who violated its order barring release of publicity. The necessity to make Farr talk was therefore held to be compelling.

California has a statute protecting a newsman from disclosing his sources of news and barring a court from holding him in contempt for refusal to disclose.[2] The

---

[1] The opinion of the California Court of Appeal, Second Appellate District, is reported in 22 Cal. App. 3d 60, 99 Cal. Rptr. 342. The Supreme Court of California denied a hearing on March 27, 1972. This Court denied certiorari on November 13, 1972. *Ante,* p. 1011.

[2] Calif. Evid. Code § 1070 (Supp. 1972) provides:

"A publisher, editor, reporter, or other person connected with or employed upon a newspaper, or by a press association or wire service, or any person who has been so connected or employed, cannot be adjudged in contempt by a court, the Legislature, or any ad-

Court of Appeal noted that while Farr had been a newsman at the time he wrote the story, he had left that employment when he was questioned by the trial judges. The Court of Appeal assertedly did not reach the issue as to whether Farr was covered by the section, holding instead that to construe the statute as granting immunity to Farr, in the face of the facts "would be to countenance an unconstitutional interference by the legislative branch with an inherent and vital power of the court to control its own proceedings."

It is argued, in return, that the remedy of criminal contempt against those subject to the trial court's publicity order is now out of reach because of the running of the statute of limitations on criminal contempt [3] and therefore that the present civil contempt proceedings against Farr serve no legitimate state interest. I have received a response from respondent which says that this is "purely a matter of state concern"—that "there is no statute of limitations" in California for civil contempts. Whether this means that Farr could be imprisoned for life is not clear.

What the merits of the case may be is not in my province at this stage. The only question is whether the issue presented is a substantial one. Our *Branzburg*

---

ministrative body, for refusing to disclose the source of any information procured while so connected or employed for publication in a newspaper.

"Nor can a radio or television news reporter or other person connected with or employed by a radio or television station, or any person who has been so connected or employed, be so adjudged in contempt for refusing to disclose the source of any information procured while so connected or employed for news or news commentary purposes on radio or television."

[3] Calif. Penal Code § 166 provides that willful disobedience of a lawfully issued court order is a misdemeanor. Calif. Penal Code § 801 provides a one-year period of limitation from the commission of the crime to the filing of the indictment, information, or complaint.

decision plainly does not cover it. Our denial of certiorari imparts no implication or inference concerning the Court's view of the merits, as Mr. Justice Frankfurter made clear in *Maryland* v. *Baltimore Radio Show,* 338 U. S. 912, 919.

The question, so far as I can tell, is not covered by any of our prior decisions. The case is a recurring one where the interests of a fair trial sometimes collide with the requirements of a free press. A fair trial requires that a jury be insulated from the barrage of prejudicial news stories that is sometimes laid down on the courtroom. It is said that in the present case the *Manson* jury was sequestered and so not subject to the kind of influence we condemned in *Sheppard* v. *Maxwell.*

The issue is not free from doubt. Yet since the precise question is a new one not covered by our prior decisions, I have concluded in the interest of justice to release Farr on his personal recognizance pending decision of his habeas corpus case by the Court of Appeals.